UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:09-CV-00204-R

**PRIMARY CARE MEDICAL CENTER, PSC**　　　　　　　　　　　　**PLAINTIFF**

v.

**PEERLESS INDEMNITY INSURANCE COMPANY**　　　　　　　　**DEFENDANT**

**MEMORANDUM OPINION**

This matter comes before the Court upon Defendant's Motion for Summary Judgment (DN 17). Plaintiff has responded (DN 18) and Defendant has replied (DN 19). This motion is now ripe for adjudication. For the reasons that follow, Defendant's Motion for Summary Judgment is GRANTED.

**BACKGROUND**

This action in diversity for breach of contract originally arises out of a severe ice storm that struck Paducah, Kentucky, on January 27, 2009. Primary Care Medical Center, PSC ("Primary Care") is a professional service corporation, "providing medical services in the fields of family practice, pediatrics, internal medicine, cardiology and obstetrics/gynecology." DN 18 at 1. There are a number of different physicians and medical professionals whose practices are affiliated with Primary Care. In the days following the storm, Primary Care, along with much of the region, lost electrical power, water, and communication services. In response, its offices were closed for three days. Primary Care does not allege that the offices suffered any structural damage.

Primary Care had previously contracted with Peerless Indemnity Insurance Company ("Peerless") for a variety of insurance coverage, including coverage for business loss and

interruption. The coverage Peerless offers is extended to Primary Care under the Commercial Protector Coverage Form ("Coverage Form") and the Physicians and Dentist Extension Plus Endorsement ("Endorsement"). Section I of the Coverage Form specifically sets out that Peerless "will pay for the actual loss of Business Income at the described premises caused by the interruption of" water supply services, communication services, and power supply services. DN 17-6 at 12. With loss of utility service, the Coverage Form limits recovery to $1,000.00 per occurrence, however the Endorsement increases possible recovery to $10,000.00 per occurrence. DN at 17-6 at 14.

Peerless admits that there was an interruption of utility service, and therefore has already submitted to Primary Care a payment of $10,000.00. Primary Care however disagrees with Peerless's interpretation of the Coverage Form; it instead claims that as "each individual physician and physician employee of [Primary Care] is considered an individual insured for the loss sustained," the coverage limit would be $10,000.00 per occurrence for each covered insured. DN 1-2 at 6-7. As a result of this interpretation, Primary Care claims that the total loss it suffered due to the three-day shut down, $110,410.44, is well within the policy's limits. *Id*. Peerless denies that the policy provides individual coverage of Primary Care's employees, alleges that the $10,000.00 payment already tendered has extinguished Peerless's obligations under the policy, and now moves for summary judgement based upon the clear policy limitations set forth in the Coverage Form and Endorsement.

**STANDARD**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

2

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

### I. Primary Care is the only covered insured under the business interruption section of the policy.

The Coverage Form is divided into three sections: (1) Section I, which generally covers loss of or to covered property ("Property Section"); (2) Section II, which generally covers Primary Care's potential liability to third parties ("Liability Section"); and (3) Section III, which details the common policy conditions. For this matter, Section III is irrelevant.

In alleging that the individual physicians are covered insureds under the policy, Primary Care points to the Liability Section that includes the following language:

> **C.** **Who is An Insured**
> 1. If you are designated in the Declarations as:
> . . .
> d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your executive officers and directors are insured, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

DN 18 at 2. Primary Care explains that in light of this definitions section, "an insured or group of insureds could easily form the opinion that they are covered as individual owners" for losses that occur under any section of the policy. *Id*. at 4. According to Primary Care, the varying definitions of who constitutes a "covered insured" in the Property Section and Liability Section create a discrepancy that must be construed in favor of Primary Care. Peerless argues that the insurance contract is unambiguous in setting forth that Primary Care is the only covered insured and that the physicians are not covered individually for this particular type of loss.

Where jurisdiction is exercised on diversity of parties, the substantive law of Kentucky governs the dispute. *Rutherford v. Columbia Gas*, 575 F.3d 616, 623 (6th Cir. 2009). Kentucky law requires that "[t]he clear and unambiguous words of an insurance contract should be given their plain and ordinary meaning." *York v. Ky. Farm Bureau Mut. Ins. Co.*, 156 S.W.3d 291, 293 (Ky. 2005) (citing *Nationwide Mutual Ins. Co. v. Nolan*, 10 S.W.3d 129, 131 (Ky. 1999)). "In

4

the absence of ambiguities, . . . the terms of an insurance policy will be enforced as written." *State Auto. Mut. Ins. Co. v. Sec. Taxicab, Inc.*, 144 F. App'x 513, 517 (6th Cir. 2005) (citing *Osborne v. Unigard Indem. Co.*, 719 S.W.2d 737, 740 (Ky. Ct. App. 1986)). However, "when a contract is susceptible of two meanings, it will be construed strongest against the party who drafted and prepared it." *Perry v. Perry*, 143 S.W.3d 632, 633 (Ky. Ct. App. 2004) (quoting *B. Perini & Sons, Inc. v. S. Ry. Co.*, 239 S.W.2d 964, 966 (Ky. 1951)).

> The following provision is located on the first page of the Coverage Form:
>
> Throughout this Coverage form the words "you" and "your" *refer to the named insured shown in the Declarations*. The words "we", "us" and "our" refer to the Company providing this insurance.
>
> In SECTION II - LIABILITY, the word insured means any person or organization qualifying as such under Paragraph C - Who Is An Insured.
>
> Other words and phrases that appear in quotation marks have special meanings. Refer to Paragraph H. Property Definitions in SECTION I - PROPERTY and Paragraph F. Liability and Medical Expenses Definitions in SECTION II - LIABILITY.

DN 17-6 at 10 (emphasis added). On the Declarations page of the policy, the named insured is clearly labeled "Primary Care Medical Center." DN 17-6 at 9. The names of the individual physicians whom Primary Care claims are individually covered under the policy do not appear on the Declarations page, nor in any other part of the policy. Finally, the provisions in the Endorsement are specifically limited by the Property Section in the Coverage Form and do not address or expand upon the definition of "covered insured." DN 17-6 at 13.

After careful review of the record, the Court is not persuaded by Primary Care's arguments that either individual physicians are covered under the policy or that the insurance contract is ambiguous. The language of the Coverage Form sets forth that the definitions of

5

"covered insured" located in the Liability Section addresses coverage only in the event of Primary Care's liability to a third party. Part A of the Liability Section discusses the business liability to potential third parties, setting forth that Peerless will "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage' or personal and advertising injury' to which the insurance applies." DN 19-2 at 1. However the losses that Primary Care suffered as a result of the utility interruption are not covered within the Liability Section; instead, these losses are covered by portions of the Property Section of the Coverage Form, which specifically provides insurance for business interruption caused by interruption of utility services.[1] DN 17-6 at 12. The policy's language is direct and unambiguous; when determining coverage of the policy under the Property Section, Peerless covers only the insured party listed on the Declarations page. It does not incorporate the definitions of "covered insured" under the Liability Section. Therefore, Primary Care cannot rely upon the definition in the Liability Section as the foundation for its claims that the physicians are covered insureds and that the contract is ambiguous.

The Coverage Form and Endorsement do not contain language outside the definitions

---

[1] Part Five of the Property Section sets forth Additional Coverages, which includes Business Income, Subsection F. DN 20-1 at 2, 11-12. Under subsection F, in the subtitle Business Income Coverage Extensions, the policy contains the following language:

>  **(b)** **Utility Services**
>  We will pay for the actual loss of Business Income at the described premises caused by the interruption of service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the following types of property located outside of a covered building described in the Declarations.

DN 17-6 at 12. The policy goes on to describe the coverage when losses result from Water Supply Services, Communication Supply Services, and Power Supply Services. *Id*.

already discussed that expands or changes who qualifies as a "covered insured." Instead, the clear terms of the insurance contract seek only to cover the named insured identified on the Declarations page for losses under the Property Section. For these reasons, the physicians operating with Primary Care could not have reasonably believed that they were each individually covered for the business income losses.

## II. The policy only provides for $10,000 worth of coverage for Primary Care.

Primary Care next charges that the policy contains ambiguous language on how much coverage is provided for lost income because of a business interruption. As examined earlier, coverage for business income losses as a result of off-site utility service interruption is covered under the policy. DN 17-6 at 12. That coverage, limited to $1,000.00 per occurrence in the Coverage Form, had been increased to $10,000.00 per occurrence for Primary Care in the Endorsement. *Id*. at 14. While the blanket coverage for business income was further extended to $100,000.00 in the Endorsement, business income losses arising from utility service interruption were exempted from that amount. *Id*. at 13.

Primary Care acknowledges that the Coverage Form along with the Endorsement establishes the general framework described above. Still, Primary Care maintains that there are portions of the policy that are convoluted and confusing. In particular, it refers to a series of exclusions in the Property Section that bar payment for any loss or damages caused by a "failure of power or other utility service." DN 18-9 at 1-2. Primary Care argues that these exclusions, when examined in conjunction with the policy section that provide coverage for utility

interruption create ambiguity as to the coverage amount.[2]

Primary Care is incorrect. The Property Section provides general coverage for the "direct physical loss of or damage to Covered Property at the described premises." DN 17-6 at 10. The exclusion to which Primary Care refers corresponds to this coverage provision and not the business loss and interruption insurance coverage that appears later in the section. Whatever ambiguity that Primary Care claims to have found exists only because it is reading two unrelated sections of the policy, clearly delineated as such, in tandem. The plain language of the Coverage Form and the Endorsement allow for $10,000.00 of coverage for this particular occurrence, and since Peerless has already tendered a check for this amount to Primary Care, its obligation under the policy has been extinguished.

## CONCLUSION

Kentucky law mandates that an unambiguous insurance contract should be enforced as written. *Kemper Nat. Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 873 (Ky. 2002). This Court finds that the coverage provided in the current contract is clear on its face; consequently there is no genuine issue as to any material fact that need be decided by a jury.

FOR THE FOREGOING REASONS, Defendant's Motion for Summary Judgement is GRANTED. An appropriate order shall issue.

---

[2] The Court had difficulty gleaning the exact legal or factual rationale of Primary Care's second argument in its response. *See* DN 18 at 8-9. Still, as the Court finds the policy to be unambiguous in its stated coverages, Primary Care's argument is inapposite.